**UNITED STATES**

v.

**Russell D. RANKIN, 491 64 8725, Lance Corporal (E-3), U. S. Marine Corps.**

**NCM 77 0800.**

U. S. Navy Court of Military Review.

26 Aug. 1977.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

LT Sander Mednick, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, BAUM and GREGORY, JJ.

CEDARBURG, Chief Judge:

Appellant was convicted, in consonance with his plea, of wrongful appropriation of $142.00 in currency and a money order, in violation of Article 121, 10 U.S.C. § 921, UCMJ. The military judge sentenced him to a bad conduct discharge, forfeiture of $80.00 pay per month for six months, and reduction to pay grade E-1.

Prior to trial appellant had negotiated a pretrial agreement with the convening authority which provided that the convening authority would suspend any bad conduct discharge and any confinement in excess of 45 days. A condition of the sentence limiting feature of the agreement was the following express provision:

> That it is expressly understood that I will not commit any act or misconduct punishable under any article of the Uniform Code of Military Justice between the date of trial and the date of the convening authority's action. Any such misconduct will void the provisions of this agreement concerning the maximum sentence to be approved and authorize the convening authority to approve any sentence adjudged or portion thereof.

At the trial, the military judge carefully inquired into appellant's understanding of the pretrial agreement. He specifically referred to the above quoted provision and got appellant's understanding as follows:

Accused: That means that I can't get in any trouble under the military Code, sir, during the time.

MJ: All right. What else?

Accused: And that if I should do so, the maximum charges that is—has been—that is been brought can be used against me.

MJ: If you commit an offense of the military Code, under military law, between today, the date of trial, and the date the convening authority takes his action, which may be tomorrow or six weeks from now, then this agreement is void. In other words, the convening authority does not have to live up to the terms of this agreement. That's what that means. Do you understand that?

Accused: Yes, sir.

MJ: Do you have any questions?

Accused: No, sir.

We conclude that appellant, who proposed the agreement including the provision he now complains of, knew he must not commit any offense, cognizable under military law, under penalty of voiding the sentence limiting portions of the agreement he had negotiated.

On 31 January 1977, before the convening authority took his action a hearing was held into alleged misconduct of appellant which was alleged to have occurred on 16 January 1977. Appellant was represented by his trial defense counsel in an extended hearing in which appellant called witnesses and made argument through counsel. The hearing officer formally found appellant had committed an assault upon a Sergeant and recommended the pretrial agreement be held void by reason of appellant's misconduct. On 23 February 1977, the convening authority approved the sentence as adjudged and declared the pretrial agreement void.

Appellant now complains:

THE CONVENING AUTHORITY FAILED TO ADHERE TO THE TERMS OF THE PRETRIAL AGREEMENT RELYING ERRONEOUSLY ON A PROVISION OF THE AGREEMENT WHICH WAS VOID AS AGAINST PUBLIC POLICY.

This Court has consistently rejected such contentions. *United States v. Bigler*, 50 C.M.R. 818 (N.C.M.R.1975); *United States v. Poling*, No. 77 0055 (N.C.M.R. 6 May 1977). We perceive no contravention of public policy in the provision's requirement of good conduct.

In the instant case, it is clear from the record that the appellant understood and agreed to the condition of good conduct to obtain the sentencing advantage he had negotiated. As was recently stated by Senior Judge Newton in *United States v. Pryor*, 3 M.J. 737 (N.C.M.R.1977):

The appellant received no more, or less, than he bargained for. The burden to behave lawfully after trial was not unreasonably imposed or unreasonably to be expected of him. That he did not so behave is shown beyond doubt. No valid reason appears for complaint at this stage of the proceedings.

It is noted that the convening authority was adequately assured of the veracity of the post-trial misconduct found, through [here, the formal hearing, replete with findings of fact and recommendations] . . .. Inasmuch as an investigative procedure-hearing-opportunity to rebut was provided to appellant, no error is apparent.

The findings and sentence as approved on review below are affirmed.

Judge GREGORY concurs.

BAUM, Judge (dissenting):

I dissent for the reasons outlined in my opinions in *United States v. Johnson*, 54 C.M.R. 435, 2 M.J. 600 (N.C.M.R.1976), and *United States v. Dugger*, 54 C.M.R. 657, 658, 1 M.J. 1069, 1070 (N.C.M.R.1976). As stated in *Johnson*, I consider a pretrial agreement provision invalid which permits the convening authority to avoid his agreed sentence terms upon an act of misconduct after conviction. The Constitutional rights forfeited by an accused upon pleading guilty are just too important and basic to our criminal justice system to permit their waiver by contract without guaranteeing compliance with the terms which induced the plea, post-trial conditions to the contrary, notwithstanding. The United States Supreme Court recognized this principle of strict compliance with plea bargains in *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and the quote from that case noted in *Dugger, supra*, bears repeating here:

When a plea rests in any significant degree on a promise or agreement . . . so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. [1 M.J. at 1071].

In my view, a pretrial agreement provision which permits a convening authority to avoid this rule of law is against public policy.

In addition, such provisions, promising no misconduct between the time of trial and the action by the convening authority, in actuality, place the accused in a status of probation which I find unlawful. As explained in *Johnson, supra,* there is no statutory authority for such probations, whether bargained for or not. Moreover, these agreements exceed the scope of the Secretarial regulation that authorizes negotiated pleas.[1] They also permit a convening authority to bypass statutorily required procedures. For example, when a convening authority has promised in a pretrial agreement to suspend a specific sentence which is later awarded at trial, execution of that sentence (i. e., vacation of the agreed suspension) is authorized only upon compliance with the statutory procedures mandated in *United States v. Bingham,* 3 M.J. 119 (C.M. A.1977). Ironically, however, if a convening authority has promised in a pretrial agreement to suspend a specific sentence but adds a condition that the accused refrain from certain post-trial misconduct, execution of that sentence (i. e., refusal to suspend it if awarded at trial) is possible *without* compliance with the statutory procedures mandated in *Bingham, supra.* Both of these circumstances involve, in substance, the same thing: a convening authority agrees to suspend a punishment; but if, after trial, the accused violates his probation by committing an offense under the Code, the promise to suspend is no longer operative and the adjudged sentence is put into effect—the only difference being that if an accused has pledged in the pretrial agreement to refrain from committing post-trial offenses, his "probation" may be revoked in total disregard of the procedures the Court of Military Appeals in *Bingham* found so essential. From this example and the anomaly it illustrates, it becomes quite evident that all convening authorities need do in future cases to avoid having to expend time and effort in complying with *Bingham*

every time they find it necessary to vacate suspensions imposed pursuant to pretrial agreements, is to include as a caveat to future promises to suspend that suspension is conditioned upon the accused's avoidance of Codal violations before suspension is actually effected. I fail to see how a provision in a pretrial agreement which can be and is being used to short circuit statutory requirements and a judicial mandate may be countenanced and deemed valid and enforceable.

The kind of pretrial agreement "no misconduct" provision at issue here allows for the imposition of punishment which not only amounts to a short circuiting of the procedures applicable to the vacation of suspended sentences, but which may very well constitute a denial of liberty or property without due process of law by a side-stepping of the entire military criminal justice system prescribed in the Uniform Code of Military Justice. Specifically, when, as a response to an accused's post-trial misconduct, a convening authority approves portions of a sentence which he had previously agreed to disapprove, not merely suspend, in return for a guilty plea, he has, for all intents and purposes, imposed punishment for those later, independent offenses without having utilized one of only four lawful means for doing so under the Code: (1) an Article 15, UCMJ, proceeding; (2) a summary court-martial; (3) a special court-martial; or (4) a general court-martial. A pretrial agreement provision cannot be valid which, from the time a sentence is awarded at trial to the time the convening authority takes his action on the record, can thus be used, in effect, as a pretext for newly punishing an accused for post-trial offenses without the benefit of Article 15, UCMJ, or court-martial proceedings.

Despite these evasions of statutory and Constitutional requirements, as I view it, the majority finds the instant pretrial provision to be lawful because it was understood and agreed upon as part of the bargain and that it is not unreasonable to require the accused to behave lawfully. In

---

1. JAG Manual, § 0114.

my opinion, this rationale begs the question because it does not purport to answer whether such a condition establishes an unlawful probation which permits the convening authority to circumvent requirements imposed by law. Neither does it address the issue of whether the Constitutional rights forfeited by a plea of guilty are so significant that performance of this condition by an accused should guarantee fulfillment of the promises which induced it and that additional conditions imposed upon the accused after pleading should be struck down as against public policy. If I am correct in my assertions concerning these provisions, then simply because they are bargained for will not make them legal. The law protects the accused from such agreements. See *United States v. Cummings*, 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968); *United States v. Scoles*, 14 U.S.C.M.A. 14, 33 C.M.R. 226 (1963); *United States v. Darring*, 9 U.S.C.M.A. 651, 26 C.M.R. 431 (1958); and *United States v. Ponds*, 1 U.S.C.M.A. 385, 3 C.M.R. 119 (1952).

Finally, the facts surrounding the voiding of the sentence terms in the instant case underscore the ever present inherent dangers in agreements which circumvent the law. The record reveals that the alleged misconduct prompting the convening authority's action may not have been misconduct at all. Appellant was physically and verbally accosted by a sergeant who then attempted to break into appellant's locked car. At that point, appellant hit him. This act apparently formed the basis for the convening authority's refusal to suspend the bad conduct discharge as promised and leaves appellant with an approved unsuspended punitive discharge. Not only were the *Bingham* procedural safeguards for vacating a suspended bad conduct discharge not followed, but the facts, as I view them, do not rise to the level of an offense under the Uniform Code of Military Justice.

I would enforce the sentence terms of the pretrial agreement and order the bad conduct discharge suspended if there were time remaining on the agreed probation period. Since the period of suspension has already run, I would disapprove the bad conduct discharge.