UNITED STATES, Appellee,

v.

Sergeant (E–5) Robert H. KERSTEN, SSN 555–70–5286, United States Army, Appellant.

SPCM 13019.

U. S. Army Court of Military Review.

10 Nov. 1977.

Lieutenant Colonel John R. Thornock, JAGC, Major Benjamin A. Sims, JAGC, and Captain R. Wade Curtis, JAGC, were on the pleadings for appellant.

Counsel for the appellee declined to file pleadings.

Before CARNE, COOK and COSTELLO, Appellate Military Judges.

## OPINION OF THE COURT

COSTELLO, Judge:

Pursuant to his provident plea of guilty, appellant was convicted of malingering and conspiracy in violation of Articles 115 and 81, Uniform Code of Military Justice, 10 U.S.C. §§ 915 and 881, respectively. The conspiracy charge was dismissed by the convening authority because the co-actor had been acquitted of the same charge. His action did not impact on this appellant's sentence because the trial judge had perceived some multiplicity and based his sentence just on the malingering offense.

■ The malingering consisted of inducing a fellow soldier to drop a rock on appellant's foot so that he would be excused from a field training exercise. The incident occurred at appellant's off-post home. That fact raises the first question we address here: was there military jurisdiction to try this case?

In addition to the facts recited above, we find that appellant was disabled from full duty performance and missed important military training, results he fully intended when his plan to shirk was formed. These facts establish a direct relationship between the crime and appellant's duties; they show the corruption of a subordinate to the detriment of military relationships and a blatant flouting of military authority. Moreover, the implications of this offense make the military interest pervasive, even though the naked act might be punishable in a civilian court. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Alef*, 3 M.J. 414 (C.M.A. 1977).

Accordingly, we hold that the trial court here had jurisdiction to try appellant for the offenses charged.

The next question concerns a possible defect in the trial judge's inquiry into the plea agreement appellant negotiated with the convening authority. Able appellate counsel properly found no issue, but we feel compelled to make certain findings *ex abundanti cautela*.

■ The apparent defect exists because the trial judge failed to recite specifically the words of one provision of the agreement, one which provided for automatic cancellation of the agreement upon "any misconduct on my part prior to the convening authority taking his final action in my case." This provision is unique in two respects: it appears in the paragraph with other "wipe out" provisions rather than alone, as is usual; it does not contain the clear authority for unilateral action by the convening authority contained in the clause tacitly approved in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). *See United States v. Lallande*, 22 U.S.C.M.A. 170, 46 C.M.R. 170 (1973); *United States v. Bigler*, 50 C.M.R. 818 (N.C.M.R. 1975). These differences create a substantial ambiguity which must be resolved in favor of appellant. *United States v. Buchheit*, 46 C.M.R. 866 (A.C.M.R.1972). We do that by finding that appellant would have been entitled to a trial *de novo* had his misconduct become an issue. This provision and three other cancellation provisions the activation of which would have resulted in a trial *de novo* were treated together by the trial judge in a series of inquiries, the principal one of which began "Sergeant Kersten do you understand that this agreement works only under certain conditions. . . ." The judge made several other general inquiries concerning the whole agreement and an adequate number of specific inquiries concerning both the general and quantum portion of the agreement.

These inquiries were made of an intelligent and experienced noncommissioned officer. They concerned a matter not critical to appellant's understanding of his plea or his deal—his misconduct would simply eradicate both. (The record does not suggest that any occurred.) In these circumstances we find that the record reflects adequately the appellant's understanding of his agreement and that the trial judge's inquiry was complete. *United States v. King*, 3 M.J. 458 (C.M.A.1977).

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge CARNE concurs.

COOK, Judge, dissents:

I dissent.

The pretrial agreement in this case contains a provision for automatic cancellation of the agreement in the event of "any misconduct on [appellant's] part prior to the convening authority taking his final action in [appellant's] case." * Nowhere in his discussions with the accused prior to accepting his guilty plea did the trial judge discuss this clause with any specificity with appellant. Given the capacity of this provision to negate the intent of the entire pretrial arrangement, the trial judge's failure to discuss its implications with the appellant can hardly be deemed inconsequential.

The majority's reliance on the appellant's age and experience is, in my view, a regression to the "sliding scale analysis" expressly rejected by the United States Court of Military Appeals in *United States v. King*, 3 M.J. 458 (C.M.A.1977).

Because I cannot find that the trial judge "strictly adhered" to the provisions of *United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976), as explicitly required by *United States v. King, supra*, I would reverse this case and authorize a rehearing.

* As to the more fundamental question concerning the legality of such a provision see Judge

Baums' dissent in *United States v. Rankin*, 3 M.J. 1043 (N.C.M.R.1977).