**UNITED STATES**

v.

**Denard JACOX, 345 52 6121, Private (E–1), U. S. Marine Corps.**

**NCM 77 1052.**

U. S. Navy Court of Military Review.

Sentence Adjudged 18 Jan. 1978.

Decided 31 March 1978.

CAPT A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

---

5. *Ex parte Bradley,* 74 U.S. (7 Wall.) 364, 19 L.Ed. 214 (1869).

6. *McPhail v. United States,* 1 M.J. 457 (C.M.A. 1976).

LT Michael C. Farrow, JAGC, USNR, Appellate Government Counsel.

CAPT Mark M. Humble, USMCR, Appellate Government Counsel.

Before DUNBAR, BAUM and GREGORY, JJ.

GREGORY, Judge:

Pursuant to his pleas, appellant stands convicted of three periods of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to a bad-conduct discharge, confinement at hard labor for 45 days, and forfeiture of $75.00 pay per month for 4 months. Intermediate reviewing authorities have approved the sentence without modification or suspension.

I

█ Appellant negotiated a pretrial agreement which provided that an adjudged bad-conduct discharge and any adjudged confinement at hard labor in excess of 30 days would be suspended on probation by the convening authority. The pretrial agreement also included the following provision:

> That it is expressly understood that I will not commit any act or (sic) misconduct punishable under any article of the Uniform Code of Military Justice between the date of trial and the date of the convening authority's action. Any such misconduct will void the provisions of this agreement concerning the maximum sentence to be approved and authorize the convening authority to approve any sentence adjudged or portion thereof.

The action of the convening authority indicates that appellant absented himself without authority on two occasions after trial and prior to the convening authority taking his action. For this reason, the convening authority considered the sentence provisions of the pretrial agreement to be null and void, did not honor the terms of the agreement, and approved the sentence as adjudged.

On appeal, appellant argues that this provision, relieving the convening authority from honoring the terms of the pretrial agreement, was void as against public policy and that this Court must now give effect to the pretrial agreement by suspending the bad-conduct discharge and the confinement in excess of 30 days.[1] *See United States v. Cox*, 22 U.S.C.M.A. 69, 46 C.M.R. 69 (1972); *United States v. Lanzer*, 3 M.J. 60, n. 4 (C.M.A.1977). In support of his contention, appellant relies on the opinions of Judge Baum in *United States v. Johnson*, 54 C.M.R. 435 (Interim), 2 M.J. 600 (N.C.M.R. 1976), and *United States v. Dugger*, 54 C.M.R. 657 (Interim), 1 M.J. 1069 (N.C.M.R. 1976).

In *Johnson* and *Dugger*, Judge Baum found the type of pretrial agreement provision at issue in this case to be against public policy and an attempt to create a probationary status beyond the power of the convening authority. Although these views of Judge Baum merit close consideration, they represent a minority view of this Court. Senior Judge Dunbar and the author judge have previously found this type of provision not to be contrary to public policy. *United States v. Ping*, No. 77 0244 (N.C.M.R. 29 April 1977), and *United States v. Whitson*, No. 77 0158 (N.C.M.R. 19 April 1977). We believe the prior decisions of this Court which have upheld the legality of similar pretrial agreement provisions set forth a correct statement of the law. *See United States v. Bigler*, 50 C.M.R. 818 (N.C.M.R. 1975); *United States v. Conticchio*, No. 76 1362 (N.C.M.R. 23 September 1976), *pet. denied*, No. 33,521 (U.S.C.M.A. 11 February 1977); *United States v. Johnson, supra*, (separate opinions of Chief Judge Cedarburg and Judge Glasgow). We also believe this type of provision has been at least implicitly approved by the Court of Military Appeals. *See United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975); *United States v. Lanzer, supra*.

---

1. As noted in Section II of this opinion, *infra*, appellant has already served the entire term of adjudged confinement.

In summary, we find this provision to have been a valid inclusion in the pretrial agreement in this case and the convening authority not to have erred in applying it in taking his action.

## II

■ Since the convening authority's action approving the entire term of 45-days confinement was taken 58 days after trial, while the pretrial agreement would have provided for suspension of confinement in excess of 30 days, we requested additional information to determine whether appellant may have been forced to serve a period of illegal confinement. The information provided reveals that appellant was released after serving 30-days confinement, immediately commenced an unauthorized absence of approximately 4 days, returned to military jurisdiction for approximately 6 days, and then commenced another unauthorized absence of 80 days, during which time the convening authority took his action. Following his return from this second unauthorized absence, appellant was reconfined for a period of 15 days, supposedly to serve the remaining portion of his approved sentence.

Appellant did not request deferment of his confinement. For this reason, the period of confinement continued to run its course during those periods when the appellant was not an unauthorized absentee. *See* paragraph 97*c*, MCM, 1969 (Rev.). It would appear that appellant also would have been entitled to 5 days "good-conduct time" for the initial portion of his confinement served. *See Department of the Navy Corrections Manual*, SECNAVINST 1640.9. Without getting into nice calculations concerning this "good-conduct time" and the number of days appellant was present for duty between his two post-trial unauthorized absences, it appears that appellant was forced to serve approximately 10 days illegal confinement when he returned after his second absence. The Government has conceded as much, and we concur.

In view of the illegal confinement of appellant, we will adjust the sentence. The entire term of confinement has been served. Despite appellant's contention that such adjustment must now relate to the bad-conduct discharge, we believe the relief granted can also relate to the forfeitures and will take action in that manner.

## III

■ During oral argument, appellate defense counsel contended that the military judge's inquiry into the terms of the pretrial agreement was inadequate. *See United States v. Green*, 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976), and *United States v. King*, 3 M.J. 458 (C.M.A.1977). We do not agree. The military judge's inquiry established that appellant understood the sentence limitations and the meaning and effect of each condition in the agreement, including that pertaining to the effect of post-trial misconduct. (R. 20–23, 35–36). As previously noted, we do not find such a condition to violate public policy. The military judge's inquiry also established that the written agreement constituted the full understanding of all parties. We find no reason to question the providency of appellant's guilty pleas.

## IV

■ Also during oral argument, appellate defense counsel noted that evidence of three prior nonjudicial punishments was received as matter in aggravation during the presentencing proceedings. Assuming, without deciding, that the decision in *United States v. Booker*, 5 M.J. 238 (C.M.A. 1977), is retroactive and renders evidence of imposition of the punishments inadmissible because the record does not establish that the accused had an opportunity to consult with counsel prior to accepting nonjudicial punishment on any of these occasions, we test for prejudice and find none.

Considering the entire record, including the minor nature of the offenses for which the prior nonjudicial punishments were imposed, we find no fair risk that the Court was influenced to impose a more severe sentence than it otherwise would have. *Cf.*

*United States v. Martinez,* 3 M.J. 600 (N.C. M.R.1977), *pet. granted,* 3 M.J. 258 (C.M.A. 1977).

Accordingly, in light of the previously discussed illegal confinement of appellant, the findings of guilty and only so much of the sentence approved on review below as provides for a bad-conduct discharge and confinement at hard labor for 45 days are affirmed.

DUNBAR, Senior Judge (concurring):

In the instant case, the convening authority and appellant entered into a written pretrial agreement. The convening authority promised to approve a certain maximum sentence if the appellant would plead guilty and refrain from committing acts of misconduct prior to the convening authority taking his action. I see nothing contrary to public policy or fair play in such an agreement. The appellant showed bad faith by willfully and materially violating the agreement by absenting himself from military service without authority. Although appellant may have been illegally confined for a short period of time due to administrative error, I find no bad faith or willful violation by the convening authority as far as the terms of the pretrial agreement. Moreover, we have corrected any prejudice to the appellant by reassessment of the sentence.

BAUM, Judge (dissenting):

I dissent from the majority's view of this case for several reasons, all of which lead me to the conclusion that the findings and sentence should be set aside and the charges dismissed.

I

*Post-Trial Misconduct Provision of the Pretrial Agreement*

The pretrial agreement in this case contains a clause permitting the convening authority to ignore his promise with respect to the sentence upon the commission of misconduct by the accused after trial. I have previously set forth my reasons for finding such a provision void. *United States v.* *Johnson,* 54 C.M.R. 435 (Interim), 2 M.J. 600 (N.C.M.R.1976); *United States v. Dugger,* 54 C.M.R. 657, 658 (Interim), 1 M.J. 1069, 1070 (N.C.M.R.1976); *United States v. Rankin,* 3 M.J. 1043, 1044 (N.C.M.R.1977). In my view, a pretrial agreement term which permits the convening authority to avoid fulfilling his promise is fundamentally unfair and against public policy. If pretrial agreements are to remain an accepted and effective means for expediting the processing of our military justice cases, just as in the civilian criminal justice system, we must require the Government to keep its promises under all circumstances. The U. S. Supreme Court addressed this issue in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and all justices agreed that promises which induce pleas of guilty *must* be kept. Excerpts from the majority and concurring opinions reflecting this imperative and the benefits accruing to the Government from plea bargain promises warrant quoting.

From Chief Justice Burger's Opinion for the Court:

The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and, by shortening the time between charge and disposition, it enhances whatever may be

the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States,* 397 U.S. 742, 751–752, 90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 747 (1970).

However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor.

\*     \*     \*     \*     \*     \*

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, *must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.* Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.* [Emphasis added].[1]

From Mr. Justice Douglas's Concurring Opinion:

These "plea bargains" are important in the administration of justice both at the state and at the federal levels and, as THE CHIEF JUSTICE says, they serve an important role in the disposition of today's heavy calendars. [Footnotes omitted].

However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, to confront one's accusers, *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, to present witnesses in one's defense, *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, to remain silent, *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and to be convicted by proof beyond all reasonable doubt, *In re Winship,* 397 U.S. 358, 90

S.Ct. 1068, 25 L.Ed.2d 368. Since *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, this Court has recognized that "unfairly obtained" guilty pleas in the federal courts ought to be vacated.

\*     \*     \*     \*     \*     \*

State convictions founded upon coerced or unfairly induced guilty pleas have also received increased scrutiny as more fundamental rights have been applied to the States.

\*     \*     \*     \*     \*     \*

Thus, while plea bargaining is not *per se* unconstitutional, *North Carolina v. Alford,* 400 U.S. 25, 37–38, 91 S.Ct. 160, 167–168, 27 L.Ed.2d 162; *Shelton v. United States,* 242 F.2d 101, aff'd en banc, 246 F.2d 571 (CA5 1957), a guilty plea is rendered voidable by threatening physical harm, *Whaley v. Johnston* [316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302] *supra,* threatening to use false testimony, *ibid.,* threatening to bring additional prosecutions, *Machibroda v. United States* [368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473], *supra,* or by failing to inform a defendant of his right of counsel, *Walker v. Johnston* [312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830], *supra.* Under these circumstances it is clear that a guilty plea must be vacated.

But it is also clear that a prosecutor's promise may deprive a guilty plea of the "character of a voluntary act." *Machibroda v. United States, supra,* 368 U.S., at 493, 82 S.Ct., at 513. Cf. *Bram v. United States,* 168 U.S. 532, 542–543, 18 S.Ct. 183, 186–187, 42 L.Ed. 568. The decisions of this Court have not spelled out what sorts of promises by prosecutors tend to be coercive, but in order to assist appellate review in weighing promises in light of all circumstances, all trial courts are now required to interrogate the defendants who enter guilty pleas so that the waiver of these fundamental rights will affirmatively appear in the record.

---

1. Excerpts from the opinion of the Court authored by Chief Justice Burger at 404 U.S. 260, 262, 92 S.Ct. at 498.

*McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. *The lower courts, however, have uniformly held that a prisoner is entitled to some form of relief when he shows that the prosecutor reneged on his sentencing agreement made in connection with a plea bargain, most jurisdictions preferring vacation of the plea on the ground of "involuntariness," while a few permit only specific enforcement.* Note: Guilty Plea Bargaining: Compromises By Prosecutors To Secure Guilty Pleas, 112 U.Pa.L.Rev. 865, 876 (1964). As one author has stated, the basis for outright vacation is "an outraged sense of fairness" when a prosecutor breaches his promise in connection with sentencing. D. Newman, Conviction: The Determination of Guilt or Innocence Without Trial 36 (1966). [Emphasis added].

\* \* \* \* \* \*

I join the opinion of the Court and favor a constitutional rule for this as well as for other pending or oncoming cases. *Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges.* One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State. [Emphasis added].[2]

From Mr. Justice Marshall's Concurring Opinion:

When a prosecutor breaks the bargain, he undercuts the basis for the waiver of constitutional rights implicit in the plea. This, it seems to me, provides the defendant ample justification for rescinding the plea. Where a promise is "unfulfilled," *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), specifically denies that the plea "must stand." Of course, where the prosecutor has broken the plea agreement, it may be appropriate to permit the defendant to enforce the plea bargain. But that is not the remedy sought here. Rather, it seems to me that a breach of the plea bargain provides ample reason to permit the plea to be vacated. [Footnote omitted].[3]

In the instant case, the convening authority promised to suspend appellant's bad-conduct discharge and all confinement in excess of 30 days upon appellant's pleading guilty. The appellant met his end of the bargain but the convening authority refused to fulfill his, citing the post-trial misconduct clause as the basis. I would void that clause and force compliance with the sentence terms if that could be done at this point. Otherwise, I would set aside the findings and return the record for a rehearing. The bad-conduct discharge could be ordered suspended by this Court to satisfy the bargain, but there is no way the promise, with respect to confinement, can be met at this stage since all confinement has been served. I would, therefore, set aside the findings of guilty on the ground of involuntariness, the breach of promise having deprived the guilty plea of its requisite voluntary character. This is but one reason for so acting in this case. There are others.

## II

*Convening Authority's Breach of the Pretrial Agreement Before Invocation of the Post-Trial Misconduct Provision*

When the convening authority promised to suspend all confinement in excess of 30 days, it meant that appellant should have

2. Excerpts from Justice Douglas's concurring opinion at 404 U.S. 264, 265, 266, and 267, 92 S.Ct. 499.

3. Excerpts from Justice Marshall's opinion concurring in part and dissenting in part at 404 U.S. 269, 92 S.Ct. 502.

been considered as having a sentence of 30 days confinement at hard labor for purposes of computing good-conduct time. Such could be seen readily if confinement had been deferred or if the convening authority had taken his action in a timely fashion prior to appellant's 25th day of confinement. In either of these events, upon the convening authority's suspending all confinement in excess of 30 days pursuant to the pretrial agreement, the confining facility would have computed a release date for appellant with good-conduct time based on a 30-day sentence instead of the 45 days adjudged by the court. According to pertinent Naval regulations, good-conduct time is automatically earned at a rate of 5 days for every 30 days of the sentence [4] and as conceded in oral argument by appellant Government counsel, there is no indication that appellant lost any of the good-conduct time he earned during confinement. Accordingly, if the terms of the pretrial agreement had been complied with, appellant should have been released from confinement after 25 days. This was not done. The appellant was released, instead, after 30 days of confinement because the convening authority did not suspend the confinement as he agreed to do and, failing that, did not take the necessary steps to have appellant released from confinement on the proper date.

There is no assertion by the convening authority that the appellant committed any offenses during his confinement. The misconduct cited as a basis for the convening authority's failure to comply with the pretrial agreement is alleged to have occurred after appellant's release. The convening authority, therefore, breached the terms of the pretrial agreement without any justification whatsoever before invoking the posttrial misconduct provision. Accordingly, disregarding the question of that provision's legal efficacy, appropriate corrective action pursuant to *Santobello v. New York, supra,* must be taken based on the convening authority's failure to fulfill his promise at the outset. Since the promise with respect to

confinement cannot now be met, the findings of guilty must be set aside. The breach of the agreement which induced the plea of guilty deprives the plea of its voluntary character and, thus, renders it improvident. The majority, although noting appellant's entitlement to good-conduct time, apparently does not consider the convening authority's failure to have appellant released from confinement on the required date as a breach of the pretrial agreement, since the matter is not addressed in the majority opinion. Instead, the majority has focused only on the illegal subsequent confinement of appellant and has chosen to reassess the forfeitures in an effort to cure that error. In my view, that later confinement is an exacerbation of the illegal 5-days confinement initially served by appellant and further underscores the need for strong corrective action at this level. As I see it, reassessment of the sentence is a grossly inadequate remedy for what has occurred in this case. It fails to take into account the mandate of *Santobello* and ignores the seriousness of the subsequent illegal confinement. As indicated, I would set aside the findings and sentence because of the convening authority's breach of the pretrial agreement. In light of the subsequent confinement, however, I would dismiss the charges rather than order a rehearing. In this regard, I find there to be a total of 20 days illegal confinement, instead of the 10 days computed by the majority.

Paragraph 97c, *Manual for Courts-Martial,* 1969 (Revised edition), prescribes that confinement will run continuously until the term expires, with certain exceptions, none of which apply to the instant facts as I read them. The majority finds the continuous running of confinement interrupted by appellant's unauthorized absence. Paragraph 97c does provide that "Periods during which the person undergoing such a sentence is absent without authority . . . shall be excluded in computing the service of the term of the punishment." Appellant, however, was not undergoing a sentence to confinement when he absented himself. He

---

4. Department of the Navy Corrections Manual, SecNavInst. 1640.9.

had been released, and since the pretrial agreement called for suspension of the remaining confinement there was no ostensible authority for him to undergo further confinement until the agreement was renounced. That was done on 17 March 1977, when the convening authority acted on the sentence, but by then the confinement had long since expired, having commenced on 18 January. I, therefore, find all of the subsequent 15 days confinement illegal as well as 5 of the initial 30 days, giving a total of 20 days illegal incarceration. Such callous disregard by the Government of its obligations under the Code, the Manual, and the pretrial agreement warrant dismissal rather than a rehearing.

### III

*Military Judge's Failure to Conduct Adequate Pretrial Agreement Inquiry*

Under *United States v. Green*, 24 U.S.C. M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (1976), the military judge must ensure that an accused fully understands the terms of his pretrial agreement and also that the understanding of trial and defense counsel comports with that of the military judge. Moreover, the judge must, with the consent of the parties, strike all provisions that are contrary to law, against public policy or offend against his sense of fundamental fairness. In the instant case, while the judge did go over the pretrial agreement with appellant, he made no attempt to explain the ramifications of the post-trial misconduct provision and ensure that the appellant understood its effects. The judge did not set forth his understanding as to what was required of the convening authority before he could void the sentence terms nor did he ask appellant if he understood how the convening authority would go about terminating the agreement. There was no mention by the judge whether the convening authority was or was not required to hold a hearing before voiding the agreement nor was there any attempt to set forth any rights that appellant might have with respect to this matter, all in the face of concrete requirements and rights as to

vacating a suspended bad-conduct discharge, which appellant had been promised. *United States v. Bingham*, 3 M.J. 119 (C.M.A.1977); *United States v. Rozycki*, 3 M.J. 127 (C.M.A.1977). Appellant could well have been confused about his rights in this regard since the judge did say just prior to adjourning, after looking at the agreement's sentence terms, "That means you're on probation and that if you give cause by your action to vacate, *that is have a hearing conducted* to determine whether or not that bad-conduct discharge should be given to you, then it will be. You would have violated your probation." (Emphasis added). Despite this statement, no hearing was ever held. The judge showed no awareness of the deleterious aspects of a post-trial misconduct provision as pointed out in my opinions on this subject and gave no indication whether he had even considered the possibility of such provisions being unfair or against public policy. Finally, the judge made no effort to set forth his understanding of the ramifications of the convening authority's promise to suspend all confinement at hard labor in excess of 30 days. Did this promise mean the convening authority would take his action on the record within a 30-day time frame? If not, what action was the convening authority required to take in furtherance of this agreement if the appellant was confined? Was deferment of the sentence to confinement contemplated? If not, just how long did all parties expect appellant to remain in confinement under the terms of the agreement? Was the sentence supposed to be treated as 30 days confinement for purposes of computing good conduct time? None of these questions were even posed, much less inquired into; yet, they were critical to a full understanding of the meaning of the promise to suspend. If the judge had fulfilled the mandate of *Green, supra*, and sought a meeting of the minds on this subject, it might have assured appellant's release from confinement at the proper time. Instead, as pointed out earlier, appellant was released late, much to his detriment. The judge's failure to adequately cover this aspect of the agreement, as well as the

ramifications of the misconduct provision, violated the *Green* mandate to appellant's specific prejudice and rendered the pleas of guilty improvident. *United States v. King*, 3 M.J. 458 (C.M.A.1977).

## IV

*Adequacy of Defense Representation*

As a final area of concern, I must address the question of defense counsel's representation in this case. In a concurring opinion in *United States v. Bloom*, 4 M.J. 794 (N.C. M.R.1978), I set forth certain minimum steps that should be taken by a defense counsel when pre-trial agreements containing post-trial misconduct clauses are negotiated and that failure to take these steps would constitute inadequate representation in my view. There is no indication in this record of trial that any of the actions I have advocated were taken by defense counsel.

Although this case was tried before my views were enunciated in *Bloom*, I find other shortcomings by defense counsel that lead me to the conclusion that his overall representation of appellant must be categorized as inadequate by the standards set forth in *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977) and *United States v. Palenius*, 25 U.S.C.M.A. 222, 55 C.M.R. 549 (Interim), 4 M.J. 169 (1977). Not only did the defense counsel fail to take the steps noted in *Bloom, supra*, but he also failed to protect his client's rights after trial. He should have either made provision for appellant's confinement to be deferred pending action by the convening authority or in the alternative should have ensured that appropriate action was taken to have his client's confinement treated as a 30-day sentence for good-conduct time computation and then taken steps to have appellant released after 25 days upon the earning of good conduct time. Such steps should have included habeas corpus action if necessary. Furthermore, trial defense counsel failed to submit any comments in response to the staff judge advocate's review pointing out the illegal post-trial confinement and abrogation of appellant's *Bingham* and *Rozycki* rights. Defense counsel appears to have met none of his post-trial responsibilities under *Palenius, supra*. For this reason, as well as those previously mentioned, I would reverse the conviction.