UNITED STATES

v.

**Sidney S. CONNELL, 545 15 8151, Private First Class (E–2), U. S. Marine Corps.**

**NCM 79 1763.**

U. S. Navy Court of Military Review.

Sentence Adjudged 30 April 1979.

Decided 17 June 1980.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and MICHEL, JJ.

MICHEL, Judge:

In accordance with his pleas, appellant was convicted of three offenses in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced by the military judge who presided over his special court-martial to reduction to pay grade E–1, confinement at hard labor for 75 days, forfeiture of $150.00 pay per month for 3 months, and a bad-conduct discharge. Thereafter, the convening authority, in taking his action on the record, did not give effect to appellant's pretrial agreement due to the misconduct of appellant while in confinement during the interim. Appellate defense counsel now assigns the following errors:

I

APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL DEFENSE COUNSEL FAILED TO ARGUE FOR A BAD–CONDUCT DISCHARGE AND NO OTHER PUNISHMENT AS A MATTER OF LENIENCY.

II

A PUNITIVE DISCHARGE WAS INAPPROPRIATE IN THIS CASE.

III

APPELLANT'S PLEAS WERE IMPROVIDENT BECAUSE ENTERED PURSUANT TO A PRETRIAL AGREEMENT THAT WAS CONTRARY TO PUBLIC POLICY.

None of these assignments has merit and these facets of appellant's appeal are disposed of accordingly; however, we reach a result favorable to appellant.

■ Appellant, at trial, clearly evidenced his preference for a bad-conduct discharge which, in his view, would expedite his foremost desire—quick separation from the United States Marine Corps. Appellant's trial defense counsel, having fully advised his client against the proposed course of action, asserted, in argument on the quantum of punishment, his ostensible professional inability to argue for a punitive discharge, and thus argued instead for "an appropriate amount of confinement, forfeitures, and possible reduction." This case is unlike *United States v. Carsjens*, No. 79 0587 (N.C.M.R. 20 June 1979), in which the appellant requested his trial defense counsel not to argue in favor of any sentence element other than a bad-conduct discharge and counsel, in response, made no argument at all. Here, there was nothing offered by trial defense counsel on appellant's behalf which might cause the military judge to reject a punitive discharge as an appropriate punishment, see *United States v. Blunk*, 17 U.S.C.M.A. 158, 160, 37 C.M.R. 422, 424 (1967), although it is obvious that the ethical considerations of the trial defense counsel militated against arguing on behalf of his client that a punitive discharge, if awarded at all, should be the only punishment imposed. *See United States v. Weatherford*, 19 U.S.C.M.A. 424, 42 C.M.R. 26 (1970). We perceive that trial defense counsel trod the middle ground between abandoning his client's interests and withdrawal from the case, which was his only other alternative. *See id.* at 426 n.2, 42 C.M.R. at 28 n.2. While expressly voicing no opinion as to the appropriateness of a bad-conduct discharge, he nonetheless argued for a punishment which would be fair under the circumstances and which would best serve the special interests and needs of his client. *See United States v. Richard*, 21 U.S.C.M.A. 227, 44 C.M.R. 281 (1972). We conclude from the record before us that trial defense counsel acted with full professional integrity and competency regarding appellant's case in defense.

■ Unlike trial defense counsel, we view the imposition of a punitive discharge as thoroughly appropriate for appellant, his history of misbehavior, and his present offenses. Recognizing, as we do, that trial defense counsel is entitled, if not required, to formulate his own view of the appropriateness of any punishment meted out to his client, see e. g., *United States v. Richard*, *supra*, the requirement exists for this tribunal to assess sentence appropriateness anew once the record of trial is properly before us. *See* Article 66, UCMJ, 10 U.S.C. § 866. Because reasonable minds may differ concerning the subjective evaluation of appropriateness, and owing to the inherently bifurcated defense representation scheme within the military criminal justice system, we can not say that either or both trial defense counsel or appellate defense counsel act improperly when they take diametrically opposed positions with respect to the imposition of a bad-conduct discharge as an imposed and approved sentence element in a particular case. We recognize this distinction not because of any desires, expressed or implied, on behalf of any particular appellant which may or may not vacillate from time to time, but simply as the manifestation of that duty imposed by law and ethical standards which mandate that *each* advocate employ his or her professional skills in such a manner as to ensure, to the greatest degree possible, the most advantageous outcome of the litigation in which the particular client has become embroiled. *See* Ethical Considerations, Canon 7, ABA Code of Professional Responsibility (August 1978, as amended).

■ Appellant also asserts that the following provision of his pretrial agreement with the convening authority is violative of public policy:

> It is further understood that the convening authority will not be bound by the terms of this agreement should I engage, after date of trial, but before the action of the convening authority, in any misconduct amounting to a violation of the

Uniform Code of Military Justice or state or federal criminal law. Should such misconduct occur, the convening authority may take his action on this case without being bound by the provisions of this agreement.

Similar provisions have prompted appellate action. *See United States v. Bigler*, 50 C.M.R. 818 (N.C.M.R.1975); *United States v. Nolan*, 50 C.M.R. 360 (N.C.M.R.1975); *United States v. May*, 49 C.M.R. 863 (N.C.M.R.1974); *United States v. Scott*, No. 73 2553 (N.C.M.R. 22 April 1974); *United States v. Hammonds*, No. 74 0740 (N.C.M.R. 11 April 1974). The more recent cases have uniformly held that such a provision is legally valid. *United States v. Jacox*, 5 M.J. 537, 538–39 (N.C.M.R.1978); *United States v. French*, 5 M.J. 655, 656 (N.C.M.R.1978); *United States v. Rankin*, 3 M.J. 1043 (N.C.M.R.1977). *See also United States v. Alvarez*, 5 M.J. 762, 764–65 (A.C.M.R.1978); *United States v. Thomas*, 6 M.J. 573, 575 (A.C.M.R.1978). *Contra, United States v. Jacox, supra* at 540–45 (Baum, J. dissenting); *United States v. Bloom*, 4 M.J. 794, 795–96 (N.C.M.R.1978); *United States v. Rankin, supra* at 1044–46; *United States v. Johnson*, 2 M.J. 600 (N.C.M.R.1976); *United States v. Dugger*, 1 M.J. 1069, 1070–71 (N.C.M.R.1976). These former decisions firmly establish that a misconduct clause in a pretrial agreement is not contrary to public policy.

We need not reach this issue here, however, because, assuming *arguendo*, the validity of this condition within the four corners of the pretrial agreement, the presiding military judge was bound to enquire into appellant's understanding of the provision and its potential impact upon the sentence which appellant would ultimately serve. Specifically, here the military judge was bound to question appellant concerning appellant's understanding of what constituted "an offense" which would trigger this provision and what recourse, if any, appellant would have should an allegation of post-trial misconduct be lodged against him. While we do not pretend to know the answers to these questions, we intuit that certainly appellant did not. That under-

standing having failed to appear in the record, we view appellant's pleas of guilty to have been entered improvidently. *See United States v. King*, 3 M.J. 458 (C.M.A. 1977); *United States v. Green*, 1 M.J. 453 (C.M.A.1976); *United States v. Elmore*, 1 M.J. 262 (C.M.A.1976); *United States v. Williamson*, 4 M.J. 708 (N.C.M.R.1977).

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge PRICE concurs.

BAUM, Senior Judge (concurring):

Since I agree with Judge Michel's determination that the pleas of guilty in this case were improvident, I see no need to address assignments of error I and II and, accordingly, would refrain from addressing them. In passing, however, I find it difficult, if not impossible, to reconcile what I consider to be diametrically opposed arguments expressed by appellate defense counsel. I can understand how counsel could raise either one of these assignments—alone—but I cannot understand how they both can be argued with any seriousness.

In assignment of error III appellant has challenged the legality of a "post-trial misconduct" provision in the plea bargain made with the convening authority. I have previously condemned such conditions in pretrial agreements. *United States v. D'Aiello*, 5 M.J. 687, 689 (N.C.M.R.1978) (Baum, J. dissenting); *United States v. French*, 5 M.J. 655, 656 (N.C.M.R.1978) (Baum, J. concurring in part, dissenting in part); *United States v. Jacox*, 5 M.J. 537, 540 (N.C.M.R. 1978) (Baum, J. dissenting); *United States v. Rankin*, 3 M.J. 1043, 1044 (N.C.M.R.1977) (Baum, J. dissenting); *United States v. Johnson*, 2 M.J. 600 (N.C.M.R.1976); *United States v. Dugger*, 1 M.J. 1069 (N.C.M.R. 1976) (Baum, J. dissenting). While still adhering to my earlier views, as expressed in these opinions, I must acknowledge that the decisions of this Court hold otherwise and must be followed until such time as they are overruled. Meanwhile, I consider it imperative that defense counsel, who deal

with commands where such provisions are utilized, make every effort to have these conditions deleted from the agreements submitted by their clients to the convening authorities. If a convening authority insists on inclusion of such a provision in an agreement then counsel should make it clear on the record that the "post-trial misconduct" clause is a term forced upon the accused by the convening authority. See my separate opinions in *United States v. Jacox, supra,* and *United States v. Bloom,* 4 M.J. 794, 795 (N.C.M.R.1978).

Here, the record does not reveal what efforts in this regard, if any, were made by defense counsel. During oral argument it was indicated that the complained of provision was a part of the preprinted form utilized in all cases by the instant convening authority. It was particularly important in this case for the defense counsel to strive for removal of this clause because appellant, who was in pretrial confinement, was concerned about the possibility that he would have difficulty completing another 30 days of confinement without committing misconduct. (R. 39). This case also underscores the problems in assuring on the record that all parties understand the meaning of these conditions. Here, no effort was made by the judge to determine exactly what the convening authority and appellant understood with respect to how the misconduct clause could be invoked, i. e. could the pretrial agreement be voided merely on an allegation of misconduct by brig authorities or was the convening authority required to afford appellant an opportunity to answer the allegations and then consider all the evidence bearing on the matter before voiding the bargain? *See* my separate opinion in *United States v. French, supra.* During oral argument before this Court it was indicated that there was a possible belief at trial that the convening authority had agreed to afford appellant some kind of hearing before considering the agreement no longer binding; such is not reflected in the record, however. We are unable to divine from the record the parties' understanding with respect to this matter and it is this problem that prompts my conclusion that the plea was improvident.

The understanding of the parties as to what was required in order to void the agreement is critical in this case because the convening authority abrogated the plea bargain based on allegations from the correctional facility alone, without first affording appellant the opportunity to be heard. The convening authority took this action when he held appellant in confinement beyond the period called for in the pretrial agreement. It was not until after the agreement was voided in this manner that appellant was afforded the opportunity to be heard. At that time, contrary to one of the most basic precepts of Anglo-American law—the presumption of innocence—appellant was saddled with the burden of *proving* his innocence of the allegations that had been lodged against him, by responding to the "opportunity" to show cause why the pretrial agreement should not be voided. Thereafter, the convening authority determined that appellant had not satisfied this burden. Moreover, the convening authority also indicated at that time that the charges against appellant would be referred to a court-martial, in addition to appellant's having to serve additional confinement that he had been promised in the pretrial agreement would not be served.

Based on these facts, I find the record to be fatally deficient in its showing of appellant's understanding of the pretrial agreement's consequences. Accordingly, I find that the providence of appellant's pleas of guilty, which rested on this plea bargain, has not been satisfactorily established on the record.