UNITED STATES, Appellee,

v.

Private (E-1) Samuel A. CHRISTIAN, 142–56–5264, United States Army, Appellant.

CM 446862.

U.S. Army Court of Military Review.

23 Aug. 1985.

* Corrected

Lieutenant Colonel William P. Heaston, JAGC, Captain Harry L. Williams, Jr., JAGC, and Captain Richard J. Anderson, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Major Byron J. Braun, JAGC, and Captain Alan L. Overton, JAGC, were on the pleadings for appellee.

Before RABY, CARMICHAEL, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Pursuant to his plea, appellant was convicted of wrongful distribution of marijuana in the hashish form in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982). He was sentenced to a bad-conduct discharge, confinement for nine months and forfeiture of all pay and allowances. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for three months, and forfeiture of $413.00 pay per month for three months.

### I. Unlawful Command Influence

Appellant asserts that the President's command policy declaring a war on drugs given official expression in the Manual for Courts-Martial, United States, 1984 [hereinafter cited as MCM], compelled the military judge's imposition of a punitive discharge as part of appellant's sentence. In support of this assertion, appellant draws our attention first to the language contained in the MCM, App. 21, [hereinafter cited as Analysis], Part IV, para. 37, which pertinently states:

> Within the range under the 15 year maximum, the penalties under paragraph 127c are generally somewhat more severe than those under 21 U.S.C. §§ 841 and 844. This is because in the military *any* drug offense is serious because of high potential for adversely affecting readiness and mission performance. *See generally Schlesinger v. Councilman,* 420 U.S. 738, 760 n. 34 [95 S.Ct. 1300, 1314 n. 34, 43 L.Ed.2d 591] (1975); *United States v. Trottier,* 9 M.J. 337 (CMA 1980). The availability of contraband drugs, especially in some overseas locations, the ambivalence toward and even acceptance of drug usage in some segments of society, especially among young people, and the insidious nature of drug offenses *all require that deterrence play a substantial part in the effort to prevent drug abuse by servicemembers.*

(Emphasis added).

Secondly, appellant directs our attention to the remarks of the military judge which

were uttered before he announced the sentence. These remarks are as follows:

> MJ: Well, Private Christian, the court is well aware that you've been a good soldier, except for this one Article 15 for leaving guard duty, and as far as courts-martial convictions, you don't have any prior courts-martial convictions, so in that respect you are a first offender. Nevertheless, I think you realize this is a serious offense. *The Army has had a war on drugs for some period of time. I can't believe any soldier in the United States Army today is unaware of the fact that use and distribution of drugs, especially in the billets, is a serious offense,* because the offense has a maximum permissible punishment of 15 years confinement, indicates some of the severity of the offense. *I've tried to balance all the factors involved in the case and arrive at an appropriate sentence for you for this serious offense and I'm prepared to announce my sentence at this time.*

(Emphasis added).

What the appellant asks this court to conclude is that the military judge was unlawfully influenced to adjudge an inappropriate sentence, because the MCM contains the President's personal policy to deter servicemembers from committing drug offenses.

We initially note that drug abuse has for numerous years been one of the most "significant disciplinary problems facing the armed forces" of our nation.[1] It is clear from the military judge's reference to the "war on drugs" that he too was aware of this fact.[2]

Although the "Analysis sets forth the nonbinding views of the drafters as to the basis for each rule or paragraph", it was "intended to be a guide in interpretation", and it accompanied the text of the MCM "through submission to the President". MCM, App. 21, Introduction.[3] For purposes of resolving this issue, we accept the challenged language of the Analysis as constituting the views of the President, but we find that these views were expressed to justify any differences between the maximum permissible punishments for drugs provided for in the MCM and those contained in 21 U.S.C. §§ 841 and 844 (1982). The language found in the Analysis clearly was not directed toward the sentencing authorities in courts-martial. Military judges, by virtue of their judicial training and special assignment to an independent trial judiciary, are well insulated from most forms of unlawful command influence. Analyzing the content of the language in the MCM and the Analysis *in toto*, the reason for which it was written, and the time when and manner in which it was published, we find "no fair risk of the exertion of improper command influence" upon the military judge. *Cf., United States v. Calley,* 46 CMR 1131, 1162 (ACMR), *affirmed,* 48 CMR 19 (CMA 1973). Neither do we believe that the military judge perceived that the President was, in any manner, attempting to influence his judicial conduct. Rather, we find that the remarks of the military judge established *per se* that he arrived at an appropriate sentence by considering legitimate sentencing factors, and that in his comments to the appellant he merely was acknowledging his awareness of the severity of the drug problems facing contemporary military society.[4] Thus, con-

1. *See, e.g.,* H.R.Rep. No. 549, 98th Cong., 1st Sess. 19 (1983), U.S.Code Cong. & Admin.News 1983, 2177; *cf., United States v. Brice,* 19 M.J. 170, 172 n. 3 (CMA 1985) ("the drug problem in the military demands command attention.").

2. Military judges, like their civilian counterparts, need not cut themselves off from the stark realities of life's everyday problems. In fact, certain schools of jurisprudence would consider it one of the judge's primary obli-

gations to be aware of such sociological tugs and pulls.

3. Thus, the Analysis to the MCM should be given very careful consideration and accorded appropriate weight in resolving questions concerning interpretations of the provisions of the MCM.

4. We also find that appellant has failed to establish factually that the military judge was refer-

sidering the totality of the circumstances, we find that appellant has failed to shift the burden of persuasion to the government regarding the issue of *actual* unlawful command influence, and that the conduct of the military judge in this case would not cause a substantial segment of the reasonable members of the public to lose confidence in the integrity of the military justice system.[5] *United States v. Cruz,* 20 M.J. 873, 883, 885 n. 16, and 886 (ACMR 1985) (en banc). Accordingly, we find this assignment of error to be without merit.

## II. Pretrial Agreement Violation

Appellant also asserts that the convening authority erred by increasing the severity of appellant's sentence beyond that authorized by the terms of the existing pretrial agreement. In the pretrial agreement, the convening authority agreed to approve no sentence in excess of a bad-conduct discharge, reduction to Private (E–1),[6] confinement at hard labor for three months and forfeiture of two-thirds pay per month for three months. On the date the agreement was signed and on the day of trial when the military judge discussed the sentencing limitation terms contained in the appendix to the pretrial agreement, two-thirds of the monthly pay of a Private (E–1) was $397.00. However, between the date of trial and the date of the convening authority's action a pay raise went into effect and two-thirds of the monthly pay of a Private (E–1) became $413.00. The convening authority, pursuant to the written recommendation of his staff judge advocate, approved a sentence including a forfeiture of $413.00 pay per month for three months.

Appellant makes the novel claim that approval of this latter amount increased the severity of the sentence beyond that which the parties had agreed upon in the pretrial

agreement. However, the convening authority's action was not beyond the general terms of the forfeiture limitations contained in the appendix to the pretrial agreement. Rather, the forfeiture limitation terms contained in the agreement appear to be ambiguous in light of the operative circumstances of this case.

 A pretrial agreement must be construed and applied in a manner that is consistent with its basic purpose, *United States v. Hannan,* 17 M.J. 115, 124 (CMA 1984), and it must encompass the complete understanding of the parties. *United States v. Kazena,* 8 M.J. 814 (NCMR 1980), *affirmed,* 11 M.J. 28 (CMA 1981). When the terms of a pretrial agreement are ambiguous either *prima facie* or, as in this case, latently, this ambiguity obviously must be resolved in favor of one the parties. As "[t]he touchstone for determining the legitimacy of a pretrial agreement is that it adhere 'to basic notions of fundamental fairness'," *United States v. Holmes,* 17 M.J. 830, 831 (ACMR 1984), *pet. denied,* 18 M.J. 438 (CMA 1984), *citing United States v. Partin,* 7 M.J. 409, 412 (CMA 1979); *see Shepardson v. Roberts,* 14 M.J. 354, 358 (CMA 1983), if an ambiguity arises in the terms of a pretrial agreement it normally must be resolved in favor of an accused. *United States v. Kersten,* 4 M.J. 657 (CMA 1977), *rev'd on other grounds,* 4 M.J. 295 (CMA 1978); *see United States v. Sercey,* 47 CMR 955 (ACMR 1973), *pet. denied,* 48 CMR 1000 (CMA 1973); *United States v. Buchheit,* 46 CMR 866 (ACMR 1972). In the case at bar, however, the appellant was afforded due notice of the existence of a situation making imminent a latent ambiguity in the pretrial agreement when his defense counsel was served with a copy of the staff judge advocate's tailored post-trial recommendation. By failing to assert in his re-

ring to the language contained in the Analysis when he uttered his above quoted comments.

5. An appellant who fails to shift the burden of persuasion in a command influence case, has failed to "raise the issue" of unlawful command influence. *See, e.g., United States v. Cruz,* 20

M.J. 873 (ACMR 1985) (en banc), where appellant failed to raise the issue of *actual* unlawful command influence.

6. On the day of trial appellant was a Private (E–1).

sponse to the recommendation of the staff judge advocate the issue of a potential latent ambiguity [7] in the pretrial agreement, appellant has waived this issue. *See* Rules for Courts-Martial 1105 and 1106; *cf.* Mil. R.Evid. 103.

We do not hesitate to invoke the doctrine of waiver against appellant, as this is precisely the type of error which should have been avoided by surfacing the problem before the convening authority took his action.

The findings of guilty and the sentence are affirmed.

Judge CARMICHAEL and Judge ROB-BLEE concur.

---

7. The ambiguity in appellant's pretrial agreement was latent in nature; that is, the terms of the agreement were clear and unambiguous until the convening authority assessed the amount of forfeitures based on the pay raise which was not in effect until after trial. While the military judge is required to carefully inquire into the terms and conditions of any existing pretrial agreements, *United States v. Green,* 1 M.J. 453 (CMA 1976), he cannot be held responsible for forseeing and discussing a genuine latent ambiguity contained in the terms of the negotiated plea. We, thus, are satisfied that appellant's plea of guilty was provident.