UNITED STATES

v.

Harvey A. SCHALLER, 108 34 3632, Staff Sergeant (E–6), U. S. Marine Corps.

NCM 79 0900.

U. S. Navy Court of Military Review.

Sentence Adjudged 1 Feb. 1979.

Decided 25 Aug. 1980.

---

LCDR P. B. Haskel, JAGC, USN, Appellate Defense Counsel.

LT Steven A. Curlee, JAGC, USNR, Appellate Defense Counsel.

LT William C. Martucci, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, SANDERS and DONOVAN, JJ.

CEDARBURG, Chief Judge:

Appellant pleaded guilty and was found guilty by a general court–martial military judge of two specifications of wrongfully presenting false claims against the United States, in amounts of $3,831.14 and 359.00, in violation of Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932. The military judge imposed a sentence consisting of a bad–conduct discharge, forfeiture of $300.00 pay per month for 24 months and reduction to pay grade E–4. The convening authority approved only the bad–conduct discharge and reduction to pay grade E–4.

Appellant assigns three alleged errors. We find no prejudicial error and affirm.

Appellant contends that:

I

THE MILITARY JUDGE ERRONEOUSLY FAILED TO ASCERTAIN WHETHER APPELLANT FULLY UNDERSTOOD THE MAXIMUM SENTENCE APPENDIX TO THE PRETRIAL AGREEMENT, AND PARTICULARLY THE PROVISION THEREOF TO THE EFFECT THAT HIS FAILURE "IN BAD FAITH" TO REQUEST APPELLATE LEAVE WOULD VOID THE PRETRIAL AGREEMENT.

II

THE MILITARY JUDGE ERRED IN NOT STRIKING AS CONTRARY TO PUBLIC POLICY THE PRETRIAL AGREEMENT PROVISION WHICH PURPORTED TO PERMIT THE CONVENING AUTHORITY TO IGNORE HIS OBLIGATIONS UNDER THE AGREEMENT IF APPELLANT REFUSED "IN BAD FAITH" TO REQUEST APPELLATE LEAVE.

III

AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE IN THIS CASE.

I

■ The portion of the pretrial agreement to which appellant's assignments of error I and II refer provides as follows:

Further, if a punitive discharge is adjudged, the accused will, without delay, submit a properly prepared request for appellate leave. Said request for appellate leave will be approved. If a punitive discharge is adjudged but the accused, in bad faith, refuses to submit a request for appellate leave, the convening authority may take his action on this case without being bound by the provisions of this pretrial agreement.

The military judge questioned appellant in regard to the pretrial agreement in general, as follows:

MJ: Did the idea for the pretrial agreement originate with you and your Defense Counsel?

ACC: Yes, sir.

MJ: Were you forced or coerced in any manner to enter into this agreement?

ACC: No, sir.

MJ: Prior to signing it, did you and your Defense Counsel discuss each of the terms of the agreement?

ACC: Yes, sir.

MJ: Did you fully understand the meaning of each of the terms of the agreement before you signed it?

ACC: Yes, sir.

MJ: Take time now to read each paragraph in the agreement and tell me if there's any provision which you do not now understand or are the least bit uncertain about.

RPTR NOTE: The accused read over the document.

ACC: Yes, sir, I understand it.

MJ: Very well. Do you have any questions concerning any of the provisions?

ACC: No, sir.

(R.9–10).

The military judge ensured that prior to commencement of the discussion of the agreement the sentencing appendix would be masked until after the pleas either had been accepted or rejected and findings and sentence rendered. The military judge then proceeded to discuss each condition of the agreement, with the exception of the maximum sentence which the convening authority had committed himself not to exceed; appellant does not assert that discussion was inadequate. After acceptance of the pleas, findings were entered, and the sentence imposed. The military judge thereafter made an additional inquiry regarding the Maximum Sentence Appendix, upon which appellant bases his assertion of inadequate explication. The discussion was as follows:

MJ: .. . . You may be seated. I am now examining Appellate Court Exhibit I, the pretrial agreement. I am removing the piece of paper that covered the sentence agreement. Paragraph one reads: "Punitive discharge as adjudged, but if a dishonorable discharge is adjudged only a bad conduct discharge will be approved. Further, if a punitive discharge is adjudged, the accused will, without delay, submit a properly prepared request for appellate leave. Said request for appellate leave will be approved. If a punitive discharge is adjudged but the accused, in bad faith, refuses to submit a request for appellate leave, the Convening Authority may take his action on this case without being bound by the provisions of this pretrial agreement." Since I have adjudged a bad conduct discharge, the Commanding General can approve the bad conduct discharge if he chooses. Furthermore, if you— However, if you refuse to submit a request for appellate leave, in bad faith, apparently according to this agreement, the convening authority may not be bound by the terms of it. However, he can't approve more than a bad conduct discharge in any event.

Second, "Confinement, or restriction and/or hard labor without confinement to be approved." I didn't adjudge any confinement, so there will be no–he can't possibly approve any confinement. Third, "Forfeiture or fine to be approved, but all forfeitures or fines to be suspended for a period of twelve months from the date of the convening authority's action." I have adjudged a forfeiture of $300.00 a month for twenty–four months which he can approve. However, in accordance with this, he must suspend it, in accordance with the terms of the pretrial agreement. "Reduction in rank to be approved, but reduction below pay grade E–3 to be suspended for a period of twelve months from the date of the convening authority's action." Well, I reduced you only to pay grade E–4, so that doesn't apply. Does–Staff Sergeant SCHALLER, does my interpretation of this, and also I am speaking to Captain [W], does my interpretation of this pretrial agreement comport with yours?

DC: Yes, Your Honor. I believe, only for the record on the reduction, I believe the convening authority can approve reduction to E–4, if I–

MJ: That is correct. He can approve the reduction only to E–4.

DC: Right, Your Honor.

(R.37).

The military judge propounded a question whether there was concurrence with his interpretation of the agreement, including a recitation of the provision that if appellant refused in bad faith to submit a request for appellate leave the convening authority would not be bound by the agreement. The question was clearly and specifically addressed both to appellant and his counsel. Counsel immediately affirmatively responded but with an amplification regarding the limitation on reduction in grade. The military judge, however, did not receive any specific response from appellant in the context of the amplifying response of the defense counsel. Appellate defense counsel now argues that the military judge never

received appellant's personal assurance of understanding of the Maximum Sentence Appendix.

Considering appellant's earlier acknowledgment that he and his counsel had initiated the agreement, had discussed each term and that he had a full understanding of the meaning of each term, we find adequate support that appellant understood the agreement, considering the record in context and in its entirety. "The key to an adequate record is not whether there is a mechanistic application and ritualistic incantation of espoused guidelines, but whether the record establishes a complete understanding of all parties to the trial as to the meaning and effect of the terms and conditions of the pretrial agreement . . ." *United States v. Kraffa*, 9 M.J. 643, 646 (N.C.M.R.1980).

■ Appellant further asserts that the phrase "in bad faith" is ambiguous and, absent clarification, the record is patently inadequate, despite assurances of understanding by counsel and appellant. We are informed by both counsel that appellant did request appellate leave which was granted forthwith. Thereafter, the sentence limitation provisions were not only honored by the convening authority but a less rigorous sentence than the one obligated by the agreement was approved. The sentence which could be awarded, affected by the Maximum Sentence Appendix, was considered in parts, namely the punitive discharge, the period of confinement, the amount of forfeiture or fine and the reduction in grade. Appellate defense counsel conceded on oral argument that those particular limiting provisions were clear and unambiguous. This Court can enforce compliance with operative limitations on sentence agreed to in a pretrial agreement but not honored, by approving a sentence consonant with the actual limitations negotiated; the providency of the plea is unaffected thereby. Here such enforcement is not necessary since the limitations of the agreement were more than followed by the convening authority.

In addition, the omission to fully explain contingent conditions, rendered immaterial by the subsequent nonoccurrence of a specified event, and which are ancillary to clear, operative sentence limitations, results in no prejudice to appellant and does not affect the providency of the plea. *United States v. Martinson*, No. 77 1814 (N.C.M.R. 30 December 1977) (Gladis J.). *See also United States v. Newton*, No. 79 0404 (N.C.M.R. 29 May 1979) and *United States v. Stevens*, No. 78 1597 (N.C.M.R. 20 March 1979). We therefore conclude the inquiry concerning the pretrial agreement was sufficiently complete' so that the providency of appellant's pleas was not defeated.

## II

■ We initiate our discussion of appellant's second assignment of error by stating our position that, regardless of who is responsible for such a proposal, a pretrial agreement provision requiring an accused to apply for appellate leave after a conviction when a punitive discharge has been adjudged is to be discouraged. Provisions for permissive application for appellate leave are routinely included in some pretrial agreements. An agreement, however, making it mandatory for an accused to apply for appellate leave, negotiated before trial and sentencing has taken place, even though it may be proposed by an accused, in some respects has the appearance of evil which can and should be avoided. We do not find that the cited provision is contrary to public policy *per se* and therefore should be held to vitiate the pleas. We do find that the provision complained of did not deny appellant a fair hearing, transform the trial into an empty ritual, cause him to forfeit a constitutional right, or preclude the exercise of a right by a prior waiver. *See United States v. Holland*, 1 M.J. 58 (C.M.A.1975) (discussion by Judge Cook of provisions of pretrial agreements condemned as contrary to law or public policy). While we would strongly urge elimination of provisions similar to the one here attacked, we determine no public policy consideration has been violated requiring reversal of appellant's pleas of guilty.

## III

■ As we review appellant's case, the sentence includes an unsuspended bad-conduct discharge. We have considered the uniformly fine military record and prior contributions to the U. S. Marine Corps of appellant during his 16 years of prior service, and the voluntary repayment by the time of trial of approximately $2,000.00 of the money fraudulently obtained as well as the agreement to continue payment at the rate of $300.00 per month.

We have also considered that the offenses in this case, two presentations of false and fraudulent claims for payment of military allowances totaling $4,190.14 extended over a substantial period of time and are grave. Appellant's position as a staff sergeant in the U. S. Marine Corps with its attendant standards of conduct, responsibility and authority has also been balanced in formulating a conclusion of whether the discharge awarded is appropriate. We are persuaded from the entire record that imposition of the bad-conduct discharge was fully supported and appropriate and should be affirmed.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge SANDERS and Judge DONOVAN concur.