**UNITED STATES, Appellee,**

v.

**Specialist Four James F. LAY, SSN 405–90–0872, United States Army, Appellant.**

**SPCM 14586.**

U. S. Army Court of Military Review.

8 Jan. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Charles A. Byler, JAGC, Captain Terrence L. Lewis, JAGC, Captain Edward J. Walinsky, JAGC, and Captain James F. Nagle, JAGC, were on the pleadings for appellant.

Major Ted B. Borek, JAGC, Major Robert B. Williams, JAGC, and Captain John P. Galligan, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

CLAUSE, Judge:

In accordance with his pleas of guilty, the appellant was convicted by a military judge, sitting as a special court-martial, of two violations of Article 130, two violations of Article 121, one violation of Article 109, one violation of Article 80, and four violations of Article 92, Uniform Code of Military Justice, 10 U.S.C. §§ 930, 921, 909, 880, 892. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $290.00 pay per month for six months, and reduction to the grade of Private E–1. The convening authority approved the findings and sentence.

Appellant's pleas of guilty were entered pursuant to a pretrial agreement. The military judge conducted a full and complete *Care* providency inquiry. However, in discussing the pretrial agreement with the appellant, he did not address each of the provisions contained therein. Specifically, he omitted the routine cancellation clauses, which included a "subsequent misconduct" provision. Appellant now asserts that his pleas must be held improvident because of the failure of the military judge to assure on the record that he understood the meaning and effect of each condition of the pretrial agreement.

The question is not whether the military judge followed the best course in conducting his inquiry, or even whether he literally followed the guidance of *King* and *Green*, but whether his inquiry fell below the standard for determining providence. I think not.

■ A military judge has the "primary responsibility for assuring on the record that an accused understands the meaning and effect of each condition as well as the sentence limitations imposed by any existing pretrial agreement." In addition he "should secure from counsel for the accused as well as the prosecutor their assurance that the written agreement encompasses all of the understandings of the parties and

that the judge's interpretation of the agreement comports with their understanding of the meaning and effect of the plea bargain." These requirements were set forth in *United States v. Elmore*, 1 M.J. 262, 264 (CMA 1976), by Judge Fletcher in his concurring opinion and made mandatory in *United States v. Green*, 1 M.J. 453 (CMA 1976). *United States v. King*, 3 M.J. 458 (CMA 1977), decided that mere substantial compliance with these requirements was not sufficient.

Although the Court of Military Appeals stated in *King* that substantial compliance with the *Green* requirements for conducting an inquiry into the pretrial agreement was not sufficient, the question remains where the line should be drawn between literal compliance and substantial compliance. In a footnote in its recent decision in *United States v. Cruz*, 10 M.J. 32 (CMA 1980), the Court of Military Appeals stated that since all the terms of the pretrial agreement in that case were mutually understood, the question of whether "strict or substantial" compliance with the *King-Green* mandate was necessary need not delay them. The Court of Military Appeals has numerous cases pending before it, both on petitions granted and on certification, involving several aspects of the adequacy of the *Green* inquiry. Also included is the specific issue involved in this case. *United States v. Crawford*, certificate for review filed, 9 M.J. 269. The previous action on petitions filed with the Court involving the *Green* issue has not clarified the issue. *See*, Lause, "Crowley: The *Green* Inquiry Lost in Appellate Limbo," The Army Lawyer (DA Pam. 27–50–77), May 1979. It is in this light that we must decide the present issue.

Pleas of guilty have long been an important part of civilian and military criminal law and account for the disposition of most criminal cases. The fact that most of these pleas were the result of negotiation between the government and the accused was not judicially noted until more recent times. The Supreme Court stated in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that "the disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." What has been insisted on is that pleas of guilty be voluntary. For some time, only advice in open court as to the defendant's important constitutional rights and the establishment of a factual basis for the plea was required. More recently, the courts began to encourage the disclosure in open court of plea bargain agreements. In *United States v. Williams*, 407 F.2d 940, 949 (4th Cir. 1969), it was pointed out that "such disclosure would enable the trial judge to exercise a proper controlling influence and to reject any such arrangements he deemed unfair either to the defendant or to the public." Similarly, in *Jones v. United States*, 423 F.2d 252 (9th Cir. 1970), the court aptly stated:

> Full disclosure reduces the risk of an unfair agreement—unfair to the public because of an unwarranted concession by an overburdened prosecutor anxious to avoid trial; or unfair to the defendant because the concession is either illusory, or, at the other extreme, so irresistible in light of the inevitable risk of trial as to induce an innocent defendant to plead guilty. Airing plea agreements in open court enhances public confidence in the administration of justice. Covert bargains excite suspicion; and arrangements in which palpably false answers to ritualistic questions are solemnly recorded reflect adversely upon all who participate.

A disclosure requirement has now been incorporated in most if not all criminal jurisdictions, either by judicial decree or by statutory rules of criminal procedure. It is clear that the underlying purpose of these rules, whatever their format, is to expose to judicial and public scrutiny all pretrial agreements. *See*, section 1.5 "Determining Voluntariness of Plea," ABA Standards Relating to Pleas of Guilty. Most jurisdictions require that the agreement be orally disclosed in open court; however, a few, including the military, have required or fol-

lowed a practice that pretrial agreements be reduced to writing. This distinction is important when one considers the consequences of a failure to follow the prescribed procedure for making the agreement a matter of record. This distinction must be considered when reviewing state and federal decisions which rely only on an oral disclosure. Where the written agreement is entered into the record and all parties agree that it contains all of the agreements between the parties, the primary purposes of disclosure have been satisfied. A review of the standards of other jurisdictions for determining providence is helpful.

Arizona is a state where the pretrial agreement is placed in writing and introduced into the record. In *State v. Salas*, 23 Ariz.App. 297, 532 P.2d 872 (1975), the court considered the failure of the trial judge to advise the defendant of the constitutional rights waived by his plea, as required by its rules of criminal procedure and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The court noted that the written agreement signed by both the accused and his counsel contained a recitation of these rights and the fact that he had been so advised by the counsel. Recognizing that the rules required that a waiver of constitutional rights and a showing of voluntariness should be demonstrated in the record at the time the plea is entered, the court stated, "we do not believe that the sole method for meeting this requirement is for the trial court to utter orally the rights of the defendant. To do so would exalt form over substance. Here the trial court personally addressed the defendant in open court and the record clearly supports compliance with the requirement that the rights of the defendant be brought to his attention and voluntarily waived. We believe that under the circumstances of this case there has been adequate compliance with the rules . . ." In another case, *State v. Mendiola*, 23 Ariz.App. 251, 532 P.2d 193, 195 (1975), the court considered the failure of the judge to establish a factual basis for one of the charges as required by the rules. The court noted the failure of appellant's counsel to bring the omissions to the court's attention. The court stated:

[I]n our opinion when a plea bargain has been reached and counsel for both the state and the defendant are present in court for the purpose of consummating that agreement by obtaining the court's acceptance of the bargained for guilty plea, counsel for both the state and the defendant have an affirmative duty to assist the court to the end that the appropriate procedural requirements are met. The appellate courts of this state have repeatedly held that counsel may not stand mute and not make known their objections, and then urge on appeal that the trial judge committed error in the admittance of unobjected evidence.

The court concluded that the record did not reflect any prejudice to the appellant from the technical failure of the judge to fully comply with the provisions of the procedural rules and again the court referred to the signed plea agreement containing the defendant's acknowledgement of understanding his rights.

The experience of the Supreme Court of Michigan in relation to omissions by the trial bench in accepting guilty pleas is also informative. In *People v. Shekoski*, 393 Mich. 134, 224 N.W.2d 656 (1974), that court reversed a guilty plea conviction and declared:

The requirements for a valid guilty plea after June 1, 1973 are set forth specifically in GCR 1963, 785.7. The bench and bar are hereby advised that strict adherence to these requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient.

Subsequently, in *In re Guilty Plea Cases*, 395 Mich. 96, 235 N.W.2d 132 (1975), the court consolidated numerous guilty plea cases for the purpose of reexamining this policy. They determined to modify their policy that failure of strict adherence to the procedure specified in the rules mandated reversal. The Court stated that in the future whether a particular departure from the rules required reversal would depend on the nature of the noncompliance.

The Texas Court of Criminal Appeals likewise determined to reverse their former strict compliance rule, and in *Guster v. State*, 522 S.W.2d 494, 495 (Tex.Cr.App. 1975), stated:

[W]here there is no showing that a defendant was prejudiced or injured by the failure of the trial court to fully comply with Article 26.13 supra, and where no objection is made to such failure at the time the plea is accepted or by motion for new trial, that failure to fully comply will not constitute reversible error on appeal. This does not alter the rule requiring reversal where there is a showing of prejudice or injury. The demarcation between such cases requiring reversal and those not requiring reversal is best left to a case by case determination ... All cases in conflict with our holding herein are overruled.

Commenting on the Court's reversal of its former position with respect to strict compliance, Judge Douglas in his concurring opinion in *Williams v. State*, 522 S.W.2d 488, 491, 492 (Tex.Cr.App.1975) stated:

Where there has been a substantial compliance with the statute and the trial court has personally inquired of a defendant and has given him an opportunity to show that his plea was not voluntary, this Court should require a defendant to show that he relied upon the failure to fully comply with the statute to his detriment ... Many cases of long standing to the contrary have been overruled because there is no logical reason for reversing cases when the error is harmless. Appellate courts should be slow to overturn established precedents but when such rules are court made and are not based upon sound reasoning, they should be expressly overruled.

What is clear from the cases cited and a review of the guilty plea jurisprudence is that courts are satisfied that the ends of justice are served by adequate compliance with procedural rules and look for prejudice before overturning guilty plea cases in most instances of noncompliance. The Supreme Court has expressly ruled that collateral relief is not available when all that is shown is a failure to comply with the formal requirements of Rule 11 of the Federal Rules of Criminal Procedure. *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). *See also United States v. Horsley*, 599 F.2d 1265 (3d Cir. 1979); *Keel v. United States*, 585 F.2d 110 (5th Cir. 1978). This background is informative in determining a standard to be applied in the instant case.

■ Turning to the facts of the instant case, the four automatic cancellation provisions appearing at page 2 of the agreement are the standard provisions appearing in most pretrial agreements, (1) withdrawals by any party, (2) entry of not guilty plea by accused or military judge on his behalf, (3) changing of plea to not guilty by accused or military judge on his behalf, and finally (4) a failure of agreement on the contents of a stipulation. As was stated in *United States v. Duval*, 10 M.J. 578 (ACMR 1980), pretrial agreements in military cases frequently include recitals that are not negotiated terms of the agreement. They merely recognize the contractual nature of the bargain without being a part of the consideration therefor, and the legal effect upon the happening of one of them would be the same even if they were not expressly included. They have no bearing on the purposes sought to be fulfilled by the *Green* inquiry. Moreover, those not already moot when the trial begins become so during the trial. As was held in *Duval*, the failure of the military judge to inquire into the terms of each of these cancellation recitals does not equate to a failure to conduct the plea bargain inquiry required by *Green*.

■ The other provision not inquired into is contained on the first page of the agreement and provides:

I understand that should I commit any acts of misconduct punishable under the Uniform Code of Military Justice between the time of entry of findings and the time the convening authority takes action on the record of trial in my case, the convening authority may consider this agreement to be null and void.

Although this provision is commonly found among the cancellation provisions and has several similar aspects, it is dissimilar to those mentioned above in that its result does not come about unless specifically included within the agreement. Failure to discuss this provision has been considered by other panels of this court. In *United States v. Crawford*, (ACMR 17 July 1980, SPCM 14567) (memo. op.), the Court found failure to discuss this and other cancellation provisions to require reversal. *See also United States v. Newland*, 9 M.J. 943 (NCMR 1980); *United States v. Connell*, 9 M.J. 758 (NCMR 1980). However, in *United States v. Davis*, (ACMR 31 July 1980, SPCM 14576) (memo. op.) another panel held in essence that a similar failure must be tested for prejudice. *See also United States v. Schaller*, 9 M.J. 939 (NCMR 1980). As stated earlier, this specific issue is presently pending before the Court of Military Appeals.

The following additional factors must be considered in determining appropriate disposition of this case. The pretrial agreement was submitted by the appellant. He states therein that he is satisfied with his defense counsel who advised him of the meaning and effect of the pretrial agreement and his guilty plea. The agreement further contains the assertion of the defense counsel that he explained the meaning and effect of the agreement to the appellant and is satisfied that he understands its meaning and effect. Not only was there no indication of any misunderstanding at the trial, there is even now no assertion that appellant did not understand the agreement he signed. On this point the military judge received the appellant's full assurance that he had read the agreement and discussed its terms and conditions with his counsel before he signed it, and that he fully understood its terms and conditions and had no questions about it. There can

be no doubt but that the misconduct provision was fully discussed by the appellant and his counsel before they submitted the pretrial offer. The provision was certainly not an inducement for appellant to plead guilty.

The subsequent misconduct provision is a part of the record, having been submitted by the appellant as a part of his pretrial offer. Consequently, all the stated purposes of the *Green* inquiry are easily met. Public confidence is enhanced by the public exposure of the plea bargaining process; the condition is exposed and there was full assurance that there are no secret agreements between the parties; the provision is clear and unambiguous on its face; the record establishes that the judge was satisfied that the plea was voluntary and provident; the ability of the appellate courts to police the terms of the agreement is not hampered. Finally, and most importantly, the subsequent misconduct provision was rendered moot in this case by the fact that the sentence adjudged was less than that negotiated for.* In determining an appropriate remedy for this case, it is important to consider another purpose to be served apart from the obvious purpose of insuring substantial justice. This is the insuring of compliance with the providency rules by the trial judiciary. In this respect, it must be recognized that trial judges are now fully aware of the required procedure, and that instances of failure are rare. The creation of a *per se* rule without regard to prejudice to the appellant would constitute little more than punishment of trial judges for their mistakes and hardly enhances public confidence in the judicial process. I doubt that elimination of judicial mistakes will ever be accomplished by judicial fiat.

The facts of this case and the applicable law suggest three possible dispositions. The first and obviously the easiest would be

---

* Had this not been the case and had the appellant been guilty of any misconduct prior to the convening authority's action resulting in enforcement of the provision, we would be presented with a different consideration. Appropriate remedies in that case might well be to void the provision because of the omission of

the judge and enforce the agreement by reassessment of the approved sentence or to declare the plea improvident. It would not be difficult to fashion a remedy in such a case which would serve the purpose of enforcing compliance with the *King-Green* inquiry and insuring that the appellant was fully protected.

to decide that *King* mandated a *per se* rule requiring ritualistic adherence to the language of *Green.* Although some of the language of *King* suggests that the Court established such a *per se* rule therein, it must be noted that the failure in *King* involved the absence of a sub rosa agreement inquiry, an issue at the very heart of the purpose for the inquiry. The Court rejected the government's proposed remedy for the stated reason that "it ignores the basic policies behind *Green* of requiring the trial judiciary to actively participate in and prepare a record for the appellate authorities which satisfactorily demonstrates the absence of such agreements." Contrary to the omission in *King*, there is no necessity to attempt to "fill in" a silent record in this case. The record presents no problems for appellate authorities other than the procedural omission of the judge. As noted earlier, the Court of Military Appeals has not yet considered all aspects of *Green* inquiry deficiencies. Additionally, the experience of other jurisdictions in attempting to apply a *per se* rule suggests a different solution at this time. The need for a full providency inquiry is now well established and the few instances of deficiency pose no problem to appellate authorities.

The second possible disposition is to find that there was compliance with *Green* in this case. Based upon the rationale of the Arizona Supreme Court, I have no difficulty in so concluding.

Finally, it can be concluded that although *Green* was not fully complied with, the pleas were not rendered improvident as a result thereof. There is military precedent for the position that not all errors and omissions of the military judge during the providency inquiry necessarily result in an improvident plea. In several cases, the United States Court of Military Appeals has considered the question of the providence of a guilty plea when the military judge misadvised the accused of the maximum punishment for the offenses to which the plea related. *United States v. Walls,* 9 M.J. 88 (CMA 1980); *United States v. Brewster,* 7 M.J. 450 (CMA 1979); *United States v. Muir,* 7 M.J. 448 (CMA 1979); *United States*

*v. Castrillon-Moreno,* 7 M.J. 414 (CMA 1979). In its latest case, *United States v. Walls, supra,* the Court stated:

All the circumstances presented by the record must be considered to determine whether misapprehension of the maximum imposable sentence affected the providence of guilty pleas. See *United States v. Dayton,* 604 F.2d 931 (5th Cir. 1979).

The Court concluded that the appellant's plea was not rendered improvident as a result of the erroneous advice of the military judge. In the recent case of *United States v. Passini,* 10 M.J. 108 (CMA 1980), the Court held that the military judge's failure to ask trial and defense counsel whether their understanding of the pretrial agreement comported with his did not render the accused's guilty pleas improvident. *See also United States v. Hendon,* 6 M.J. 171 (CMA 1979). The Court in *Passini* recognized the duty of counsel to reveal in open court any discrepancy between the pretrial agreement and their understanding thereof. This duty should logically extend to omissions as well as discrepancies. Counsel have a far greater familiarity with the contents of the agreement than the military judge who examines it only in open court. They have the responsibility for drafting, submission, consideration and advice as to its contents, and acceptance. I believe the accused and his counsel should be accountable for the documents submitted and personally signed by them. Where these documents form a part of the record, appellate courts should have no hesitancy in recourse to them. To do less is to demonstrate a lack of faith in their competency. The responsibility for judicial scrutiny and acceptance of a negotiated plea submitted by an accused should be shared by the judge and counsel for both parties to the agreement. A *per se* rule does little more than encourage counsel to lie back and hope for a deficiency.

In effect, this final possible disposition is a test for prejudice. Although military courts, contrary to most civilian courts, have not spoken in terms of prejudice to the

accused in considering failures of the military judge, I believe the difference is one of semantics. A prejudice test would allow intermediate appellate courts a wider base for determining providence. The alternative is in effect a *per se* rule with exception carved out by the highest court on a case by case basis. This necessarily results in confusion at the intermediate level and can result in far more reversals than may be warranted. The present state of compliance with and understanding of the providency requirements justifies a less rigid standard for review. Article 59(a), UCMJ, 10 U.S.C. § 859(a), is the congressionally mandated standard for appellate military courts. I do not believe that it should be lightly disregarded unless there are overriding considerations pertaining to substantial justice as distinguished from enforcement of a judicial rule. The instant case surely does not warrant such a deviation from the military appellate standard. All of the stated reasons for the *Green* rule are met in this case. The ABA standards for pleas of guilty have been met and there is more than substantial authority in civilian jurisdictions for applying a test for prejudice in this case. It is clear that the appellant was not prejudiced by the omission. The misconduct provision was not one for his benefit and certainly was not an inducement for his plea. In addition, the provision became moot because of the sentence adjudged.

In conclusion, I find that appellant's plea was provident and that there was "adequate" compliance with *Green* in the instant case. Even if this were not so, I would find no prejudice to the appellant as a result of the omission. For the foregoing reasons I would affirm.

The findings of guilty and the sentence are affirmed.

WATKINS, Judge, concurring:

I concur. In my view, ritualistic reiteration on the record of each of the terms and conditions of a pretrial agreement—an agreement which has previously been negotiated, reduced to writing, and signed by the parties—is not the only method of ensuring that an accused's pleas of guilty are in law voluntary and provident, particularly where, upon examination and discussion of the agreement in open court, there is not the slightest indication of contractual ambiguity or illegality, coercion, or inadequate legal advice by or dissatisfaction with counsel. *See generally United States v. Passini,* 10 M.J. 108 (CMA 1980); *United States v. Cruz,* 10 M.J. 32 (CMA 1980); *United States v. Salley,* 9 M.J. 189 (CMA 1980); *United States v. Duval,* 10 M.J. 578 (ACMR, No. SPCM 14705, 30 October 1980).

In any event, the appellant suffered no material prejudice to his substantial rights as a result of the trial judge's failure to conduct a more expansive inquiry into the cancellation provisions of the pretrial agreement (including the subsequent misconduct provision which in effect became moot when the adjudged sentence proved to be less than the punishment limitation bargained for in the formal agreement). Accordingly, I join in affirming the findings of guilty and the sentence.

FULTON, Senior Judge, concurring in the result:

In this case, the trial judge neglected to fulfill his responsibility, imposed by the Court of Military Appeals, "for assuring on the record that an accused understands the meaning and effect of *each* condition ... [of] any existing pretrial agreement."[1] That is, the judge neglected this obligation unless it is sufficient that the agreement has been reduced to writing and the accused has professed to have read and understood the whole of it.[2]

1. *United States v. Green,* 1 M.J. 453, 456 (CMA 1976).

2. In fact, such a rule would not impair accomplishing the objectives of the *Green* inquiry since that inquiry usually only elicits the accused's subjective belief that he understands the matter being discussed. Objective assurance that the accused truly understood would entail a more searching examination, perhaps including questioning the trial defense counsel as well.

The Court of Military Appeals may have departed from its former standard of literal compliance with *Green's* mandate, at least with respect to the concordance of the parties' interpretation with that of the trial judge.[3] However, I do not believe the Court has yet gone so far as to eliminate the need for specific inquiry regarding a condition as closely intertwined with the sentence limitation as the one here involved, so I approach this case as one of insufficient compliance with *Green.*

The unaddressed condition was particularly important because, placing the appellant in a probationary status from the end of his trial until promulgation of the convening authority's action on the record, it would have permitted the convening authority to rescind his agreement to limit the sentence because of some further misconduct by the appellant in the meantime, despite which the appellant would remain bound by his plea of guilty. Such conditions have engendered judicial controversy.[4] The question of their validity has attracted the attention of the Court of Military Appeals.[5] Assuming that the condition is not invalid, there is also a question as to the detail with which its possible operation must be explained to an accused.[6]

As is frequently the case, the post-trial misconduct condition became harmless before this court was called upon to consider the providence of the plea. Usually, this happens because there is no post-trial misconduct or at least none of such gravity that the convening authority invoked the condition. Here, however, the condition became ineffective as soon as the sentence was adjudged since, as the sentence did not exceed the agreed limitation, the convening authority could approve it (and could not increase it) regardless of the appellant's behavior. Whatever may have been the appellant's understanding—or lack of it—concerning the condition, he never in fact became subject to it.

Some decisions of the Court of Military Appeals suggest that, if a condition associated with a plea of guilty is incapable of adversely affecting an accused, it cannot affect the providence of his plea.[7]

I would extend that doctrine to cases such as this one.[8] Admittedly, there is some difference, for the conditions dealt with in *Partin* and *McCray* had no legal life whatsoever, whereas the post-trial misconduct condition in this appellant's plea bargain had a theoretical potential for harm. However, it seems reasonable to assume that, if the appellant was willing to enter into a plea bargain containing such a potent condition (even if he may not have appreciated the risk involved), he certainly would have entered into the same agreement without that condition.[9] Therefore, I do not see how the condition, having been prevented from becoming operable, could be said to affect the providence of his plea. Accordingly, I conclude that the failure of

---

3.  *Compare United States v. Passini,* 10 M.J. 108 (CMA 1980), *and United States v. Cruz,* 10 M.J. 32 (CMA 1980), *with United States v. King,* 3 M.J. 458 (CMA 1977) *and United States v. Crowley,* 7 M.J. 336 (CMA 1979); *cf. United States v. Myles,* 7 M.J. 132 (CMA 1979).

4.  *See, e. g., United States v. D'Aiello,* 5 M.J. 687, 689–90 (NCMR 1978) (Baum, J., dissenting).

5.  *United States v. Dawson, pet. for review granted,* 9 M.J. 28 (CMA 1980) (specified issue); *but see, United States v. Passini,* 10 M.J. 108 n.1 (CMA 1980).

6.  *United States v. Connell,* 9 M.J. 758 (NCMR), *certified for review,* 9 M.J. 265 (CMA 1980) (certified issue I).

7.  *See United States v. Partin,* 7 M.J. 409 (CMA 1979) (trial judge's erroneous interpretation of condition in plea bargain); *United States v. McCray,* 7 M.J. 191 (CMA 1979) (no bargain with convening authority, but trial judge required acknowledgement containing misstatements of law); *cf. United States v. Thomas,* 8 M.J. 216 (CMA 1980) (mem.), *aff'g,* 6 M.J. 573 (ACMR 1978) (on issue granted at 6 M.J. 191).

8.  *United States v. Rabago,* 10 M.J. 610, 613 (ACMR 1980) (Fulton, Sr. J., concurring).

9.  The frequency with which this court observes the post-trial misconduct provision already pre-printed on command-sponsored pretrial agreement forms attests to the fact that the condition seldom, if ever, has originated with an accused.

the military judge to assure specifically that the appellant understood the condition was a harmless error and not one affecting the providence of the plea.[10]

For the foregoing reasons, I concur in the majority's disposition of this case.

UNITED STATES, Appellee,

---

**10.** To the effect that, when new procedural requirements are imposed the Uniform Code of Military Justice harmless error rule becomes "an extremely important one and should be given full force and effect," see S.Rep.No. 486, 81st Cong., 1st Sess. 25 (1949), *reprinted in* [1950] U.S. Code Cong. Service 2222, 2250.

As for the trial judge's failure to discuss with appellant the so-called cancellation clauses, all of which would involve or permit a change in the plea, see our opinion in *United States v. Duval*, 10 M.J. 610 (ACMR 1980).